934 So.2d 636 (2006)
Gillian J. SMITH, Appellant,
v.
Michael SMITH, Appellee.
No. 2D04-3443.
District Court of Appeal of Florida, Second District.
August 2, 2006.
*638 Mark A. Neumaier, Tampa, for Appellant.
Corinda Luchetta, St. Petersburg, for Appellee.
FULMER, Chief Judge.
In this appeal Gillian Smith, the Wife, challenges several items in the equitable distribution scheme found in the trial court's Amended Final Judgment of Dissolution of Marriage, as well as the overall unequal distribution in favor of the Husband, Michael Smith. Because several distributions are not supported by evidence in the record, we reverse and remand for the trial court to reconsider the distribution scheme.
The parties were married for about thirteen years at the time of their separation in March 2003. The Husband served in the Navy before and during the marriage and accrued a pension. Both parties took out education loans during the marriage, which had balances as of the time of dissolution. Other assets and liabilities included real property and mortgages thereon, vehicles, credit card and other debt, and 401(k) plans. At issue in this appeal are the trial court's equitable distribution rulings regarding the Husband's Navy pension, the education loans, certain credit card debts, mediation fees, and the overall unequal distribution in favor of the Husband.
We review the trial court's distribution of marital assets and liabilities for abuse of discretion. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). "The final distribution of marital assets ... must be supported by factual findings based on substantial competent evidence." Guida v. Guida, 870 So.2d 222, 224 (Fla. 2d DCA 2004); § 61.075(3), Fla. Stat. (2003). "[W]hile appellate courts are reluctant to disturb the findings and judgments of a trial court, particularly in respect to financial awards in marital cases, it nevertheless becomes [the court's] duty to do so when an award is clearly not supported by substantial, competent evidence." DeHart v. DeHart, 360 So.2d 1285, 1286 (Fla. 2d DCA 1978).

The overall equitable distribution scheme
At the conclusion of the dissolution hearing, the trial court asked the parties to submit written closing arguments. The parties did so, each attaching a proposed equitable distribution scheme. The Husband's proposed scheme omitted the three credit card balances in controversy and the parties' respective education loan balances. The Husband's proposal resulted in a positive balance of $6,710.62 in the Wife's favor, which the Husband proposed be equalized by a payment from the Wife to the Husband in the amount of $3,355.31.
The court adopted much of the Husband's proposed scheme in its Amended Final Judgment, but also made the following changes: (1) two small assets were moved from the Husband's column to the Wife's column; (2) the controversial credit card balances were allocated to the Wife's column; and (3) each party's education loan balance was allocated to his or her respective column. The court's distribution resulted in a disparity of $16,302.14 in the Husband's favor.[1] Inexplicably, however, *639 the court also adopted the Husband's equalization payment of $3,355.31, Wife to Husband, thus further increasing the differential in the Husband's favor.[2] The court did not state a reason for adopting this equalization figure or for making an unequal distribution. After a thorough review of the record, we are uncertain whether the trial court intended an unequal distribution in the Husband's favor in a specific amount or whether the court intended an equal distribution but made one or more miscalculations.
The initial premise behind an equitable distribution of marital assets and liabilities is equal distribution. § 61.075(1). "However, where a justification is shown, a trial court may make an unequal distribution." Feger v. Feger, 850 So.2d 611, 615 (Fla. 2d DCA 2003). And, "[t]he final distribution of marital assets, whether equal or unequal, must be supported by factual findings based on substantial competent evidence." Guida, 870 So.2d at 224 (emphasis added). The "specific written findings of fact" are to include findings that "advise the parties or the reviewing court of the trial court's rationale for the distribution ...." § 61.075(3)(d). Even when the court determines that an unequal distribution is warranted, the court "must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be shortchanged." Feger, 850 So.2d at 615 (citations and internal quotation marks omitted).
Here, although the trial court stated findings to support its allocation of individual assets and liabilities, it did not include explicit findings to support the overall disparity of the equitable distribution scheme or the extra "equalization" payment that further reduced the Wife's column. On remand, after addressing the errors we discuss below, the trial court shall reconsider the overall distribution scheme. If the court determines that an unequal distribution is warranted, the court must include in its order factual findings that justify the unequal distribution.[3]

Husband's Navy pension
The trial court found that the Husband served in the Navy for twenty years, including nine years and seven months during his marriage to the Wife. At the dissolution hearing, the Husband offered into evidence an exhibit titled "Present Value of Wife's Share of Husband's Military Retirement Pay." The Husband testified that he calculated the value on his own, using an IRS life expectancy table and a computer. The Wife objected on the ground that the Husband was not an actuary *640 and that it was her view that the Husband's lawyer did the actual calculations and was having the Husband testify to them. The court accepted the Husband's calculation as a demonstrative aid, but not as evidence, and stated that "it will not have the same weight as evidence, however, I will use it to arrive at a decision." Because, at this point, the hearing was in its last stages, the court ordered the parties to submit closing arguments in writing and advised the Wife that she could include her own calculation of present value as a demonstrative aid if she wished to oppose the Husband's calculation.
The Wife's closing argument did not include a present value calculation of the pension or even a value for or allocation of the pension in her proposed equitable distribution chart. The Wife focused her argument on the use of the deferred-distribution method of distributing her share of the pension, as opposed to the Husband's proposed immediate-offset method. The court accepted the Husband's calculation and ordered that "[t]he Husband is awarded his Navy pension, which has a present value of $26,341.00." On appeal, the Wife argues (1) that the Husband's pension figure was actually that of the Wife's share of the pension only and that therefore the equitable distribution scheme, by omitting the Husband's share, was skewed in the Husband's favor by an even greater amount than that already reflected in the bottom line, and (2) that the Husband's present value calculation, not performed by an expert, was arbitrary.
In the Amended Final Judgment, the trial court makes a factual finding that "the marital value of the Husband's Navy pension is $26,341." However, the trial court also refers to the $26,341 figure as "the Wife's share of the monthly benefit." Thus, it is not clear whether the court realized that it was distributing only one-half of the marital portion of the pension and that the Husband's share of the marital portion of the pension was not expressly included in the equitable distribution.
The Wife was entitled to have equitably distributed the portion of the Husband's Navy pension that accrued during the marriage. §§ 61.075(5)(a)(4), 61.076(1). Although we could locate no case addressing the situation in which one spouse's portion of the pension was omitted from an equitable distribution scheme, it is clear that if a pension with a marital portion exists, the entire marital portion must be incorporated into the scheme. See, e.g., Diffenderfer v. Diffenderfer, 491 So.2d 265, 270 (Fla.1986) (holding that "a spouse's entitlement to pension or retirement benefits must be considered a marital asset for purposes of equitably distributing marital property"). On remand, therefore, the trial court shall include the entirety of the marital portion of the Husband's Navy pension in the equitable distribution.
Because on remand the court will be required to reconsider its distribution of the pension, any impropriety in the method used by the Husband to calculate the Wife's portion of the pension has become a moot point. Nevertheless, because the trial court accepted the Husband's proposal to use the immediate-offset method to distribute the pension, we direct the trial court's attention to the guidance provided in Trant v. Trant, 545 So.2d 428 (Fla. 2d DCA 1989). We also direct the trial court's attention to the observation that this method of distribution "requires complicated calculations and will generally require expert testimony." Id. at 429. Finally, we further note that it is the pension holder's interest in the pension that is calculated to present value based on competent, substantial evidence. In this case, there was no evidence to support the Husband's *641 calculation in any respect. A demonstrative aid together with argument does not provide an evidentiary basis for a finding as to valuation of a pension.

Education loans
The court found that the Wife had an outstanding education loan balance of $30,908, and that the Husband had an education loan balance of $11,000. Both loan balances were incurred during the marriage and are, therefore, marital debts. See § 61.075(5)(a)(1). The parties do not dispute the balances. The court allocated each party's loan balance to that party, writing:
Pursuant to Florida Statute 61.075(1)(g), the Court finds that it is appropriate that each party should be responsible for [his or her] student loan[] as neither party will benefit from the future income of the other party post divorce. The Court finds that the Husband helped support the Wife while she was obtaining her nursing degree. The Wife is now self sufficient and the Husband will not receive any benefit of her income in the future, just as the Wife will not receive any benefit of the Husband's future income.
Section 61.075(1) lists factors that a court may consider when ordering an unequal distribution. If, in citing this section, the trial court intended that its allocation of the two loan balances justified an overall unequal distribution in the Husband's favor, we conclude that the court was in error. The mere fact that the Wife's loan balance happens to be larger than the Husband's does not justify an unequal distribution scheme. The fact that "the Husband will not receive any benefit of [the Wife's] income" after the dissolution is not a factor contemplated by section 61.075(1). Furthermore, the record indicates that by completing nursing school, the Wife was able to contribute significantly more to the household income than she did before. We also note that the specific provision cited by the trial court, section 61.075(1)(g), does not address the incurring of marital liabilities in general but rather addresses "the incurring of liabilities to, both the marital assets and the nonmarital assets of the parties." An education loan is not a liability that attaches to a marital or nonmarital asset.

Credit card debt
The court allocated $12,522.86 in credit card debt to the Husband and $18,177.00 to the Wife. On appeal, the Wife disputes $13,240.00 of the latter figure, comprising three credit card balances. With respect to these cards the court stated:
that there were various other credit cards that the Wife obtained without the Husband's knowledge. There was evidence presented in court that the Wife used these credit cards to go on vacation with her family without the Husband. Pursuant to Florida statute 61.075(1)(g), one ... of the factors to be considered by the Court in distributing marital assets and liabilities is "the contribution of each spouse to the acquisition, enhancement, and production of income or the improvement of, or the incurring of liabilities to, both the marital assets and non marital assets of the parties." To the extent that these credit cards obtained by the Wife without the Husband's knowledge were incurred during the marriage and are by definition marital liabilities, the Court finds it appropriate to require the Wife to be responsible for the AT & T MasterCard which the Wife has valued at $11,000.00, the Citi Financial which the Wife has valued at $1,300.00, and ChartWay Visa which the Wife has valued at $940.00. See Jonsson *642 v. Jonsson, 715 So.2d 1064 (Fla. 5th DCA 1998).
An exhibit of credit card statements entered into evidence indicates that about $5,000 was transferred to the AT & T MasterCard from other credit cards and that the card was used for purchases at department stores. The Wife testified, without contradiction, that the majority of the AT & T MasterCard debt was a consolidation of existing marital liability. The Wife acknowledged that she used the card to go on vacation with her mother without the Husband. It is unclear from the record how much of the balance on the card was used for this vacation other than the Wife's testimony that it "was not very much." The Husband testified that he did not know what the Wife used this card for. Although we agree that the trial court would have been acting within its discretion to allocate the vacation component of the AT & T MasterCard debt to the Wife, there is no competent, substantial evidence that the entire balance on the card was attributable to the Wife's alleged misuse of credit. The court's allocation of the entire balance to the Wife was therefore an abuse of discretion. Furthermore, contrary to the court's findings, there was no evidence that the CitiFinancial card and the Chart-Way Visa were used for the Wife's husband-free vacation or for any improper purpose. And, there is no evidence that these cards were obtained without the Husband's knowledge. Thus, allocating the entire balances of these two cards to the Wife was likewise an abuse of discretion. As such, the court will need to reconsider these three debt distributions on remand.
As with the education loans, the trial court cited section 61.075(1)(g) in its order, but the purpose of the citation is not entirely clear. As previously explained, this provision does not address marital liabilities in general. To the extent that the trial court intended that the balance on the AT & T MasterCard attributable to the Wife's vacation justified an unequal overall distribution in the Husband's favor, the trial court will need to make such a finding explicitly and ensure that the bottom line of the equitable distribution reflects the amount attributable to the vacation.

Mediation fees
In its equitable distribution scheme, the trial court allocated to the Husband, as a marital liability, $1960 in mediation fees paid by the Husband. This was error. We do not consider mediation fees to be a marital liability as defined in section 61.075(5). And, even if they were categorized as a marital liability, it was error to include them in the equitable distribution scheme because they were incurred after the date established for identification and valuation of marital liabilities. If the parties were referred to mediation by court order, the apportionment of mediation fees should have been stated in the order of referral.[4]See Fla. Fam. L.R.P. 12.740(c) (2003). Because these fees were apparently not previously addressed in a mediation order, they should be addressed as a cost issue under section 61.16(1). On remand, the court shall omit mediation fees from its revised equitable distribution scheme.

Conclusion
We reverse and remand for the trial court to reconsider its equitable distribution *643 scheme in a manner consistent with this opinion. If the trial court determines that an unequal distribution is warranted, it shall make the requisite factual findings to justify an unequal distribution based on competent, substantial evidence.
WHATLEY and LaROSE, JJ., Concur.
NOTES
[1] This is our own calculation based on the individual asset and liability figures found in the "Ordered and Adjudged" section of the trial court's order. The order does not include a summary of the court's equitable distribution scheme showing each party's total. We urge trial courts to include in their orders of dissolution a tabular summary of the equitable distribution scheme. Doing so should assist the trial court itself in finding errors such as those described here; it will also enable litigants to pinpoint potential errors that can readily be addressed in a motion for rehearing, and it will assist the appellate court in reviewing the equitable distribution scheme.
[2] The trial court wrote simply: "After distributing the assets and liabilities, the Court finds that the Wife shall pay the Husband an equalization payment of $3,355.31 upon the entry of the Final Judgment."
[3] If, on remand, the trial court retains certain rulings in the Amended Final Judgment of Dissolution of Marriage that are not at issue in this appeal, the court will need to correct the following discrepancies before issuing its revised judgment. In the "Background and Jurisdictional Findings" section of the Amended Final Judgment, the court found that the Wife's 401(k) should be distributed to the Husband. In the "Ordered and Adjudged" section of the judgment, the court distributed this asset to the Wife. In the "Background and Jurisdictional Findings" section, the court distributed one component of a Paine Webber account to the Husband and the other component to the Wife. In the "Ordered and Adjudged" section, both components were distributed to the Wife.
[4] The only mediation-related document in the record on appeal is an "Outcome of Family Mediation" showing that the parties had reached an impasse. A circuit judge different from the one who presided over the dissolution hearing was overseeing the case at the time of mediation.